(64 App. Div. 390.)

PEOPLE ex rel. KINNEY v. WHITE et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

PUBLIC SCHOOLS—ATTENDANCE OFFICER—GREATER NEW YORK CHARTER—CONTINUANCE IN OFFICE.

Greater New York Charter, § 1117, provides that all superintendents, assistant or associate superintendents, and all principals, teachers, and "other members of the educational staff" in the public-school system of New York City as constituted by the act, shall continue in office. *Held*, that an attendance officer, appointed prior to February 1, 1898, was not continued in office after that date by the provisions of this section.

Certiorari on the relation of Julius Kinney, directed to Patrick J. White and others, composing the school board for the borough of Queens in the city of New York, to review the proceedings of the board in the matter of the dismissal of the appeal and refusal to reinstate in office the relator. Determination of the board affirmed.

Argued before GOODRICH, P. J. and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Julius M. Mayer (Abm. S. Gilbert, on the brief), for relator.
William J. Carr, for respondents.

SEWELL, J. It appears by the return herein that William H. Allen was duly appointed attendance officer by the board of education of the village of Flushing on the 29th day of June, 1897, "for the ensuing school year from September 1, 1897"; that Allen resigned, and on January 4, 1898, the relator was appointed to fill the vacancy. It also appears that the relator continued to discharge the duties of attendance officer until September 1, 1898, after which time the borough superintendent refused to recognize the relator as attendance officer, and on January 5, 1899, wrote him as follows:

"Dear Sir: My attention has been called to the fact that you are still acting in the capacity of attendance officer in the Flushing village. While the board has taken no formal action in the matter, yet I know the opinion of most of them, and it is for this reason that I am constrained to inform you that I cannot consider you as an attendance officer in the employ of this board."

The relator appealed to the school board of the borough of Queens from this decision or determination of the borough superintendent. The appeal was referred by the school board to the committee on attendance and health to investigate and report thereon. The committee reported that the request of the relator should be denied, and this report was adopted. No questions in relation to the necessity of a formal trial, or proving facts averred on one side and denied on the other, are presented, inasmuch as it appears by the return that no charges were made against the relator, and that the school board did not proceed in the matter of the appeal or application of the relator under section 1116 of the Greater New York charter, but denied it on the sole ground that "the term of office for which said Kinney had been appointed expired at the end of the school year which began September 1, 1897." The case may be made to turn upon the question whether the relator continued to hold office after February 1, 1898, at which date all the appointments made by the board of education terminated except so far as they were continued by section 1117 of the Greater New York charter. The determination of this question, therefore, involves the construction and effect to be given to the section referred to. That section does not in terms say that attendance officers shall continue to hold their respective positions, but it is argued that they are included therein, or at least that they are included in the expression "and other members of the educational staff in the public school system." We do not believe that this was the intention of the legislature.

Prior to February 1, 1898, an attendance officer was merely a police functionary charged with the duty of enforcing the compulsory educational law under the supervision of the superintendent of schools. His powers and duties were entirely dissimilar from those employed to lead out and train the mental powers of children. It was his duty to arrest any child between the ages of 8 and 16 years who was a truant from instruction, and deliver the child so arrested either to the custody of a person in parental relation to the child or to the teacher from whom such child was then a truant. We think that the words "educational staff," in section 1117, are to be construed the same as "teaching staff," in section 1103, and that they have no broader signification. If it had been intended to continue all officers and employés within the possible capacity of these words when standing alone, they would not have been preceded by the words "principals" and "teachers." By a well-settled principle of statutory construction, when a particular class is spoken of, and general words follow, the class first mentioned is to be treated as the most comprehensive, and the general class treated as referring to persons ejusdem generis with such class. Hermance v. Supervisors, 71 N. Y. 481; Hickey v. Taaffe, 99 N. Y. 204, 1 N. E. 685, 52 Am. Rep. 19. Applying this rule to the case in hand, we think that the term "educational staff" is not to be interpreted as including attendance officers, and in view of this conclusion it is not necessary to consider or determine whether a writ of certiorari will lie to review the action of the school board in refusing the application of the relator. We are therefore of the opinion that the determination of the board of education should be affirmed, with $50 costs and disbursements. All concur.