## VOLUME 83,

AND

## New York State Reporter,

## VOLUME 117.

(85 App. Div. 47.)

BROOKLYN TEACHERS' ASS'N et al. v. BOARD OF EDUCATION OF
CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. June 19, 1903.)

1. SCHOOLS—GREATER NEW YORK—TEACHERS—PROMOTION LISTS.
Greater New York Charter, § 1090 (3 Laws 1901, p. 472, c. 466), pro-
vides that all teachers shall be appointed by the board of education on
the nomination of the board of superintendents, and that such nomina-
tions must be made from the list of properly certified teachers in the
regular order of the standing of the candidates on the lists, and that
existing eligible lists in the city of New York, and the relative standing
of persons thereon, shall not be affected by the passage of the act. Sec-
tion 1101 requires that all licenses to teach, or certificates of qualifi-
cation for teaching, granted by the superintendent of public instruction
of Brooklyn, or by authority of the board of education of that city,
prior to February 1, 1898, shall be recognized by the board of examiners
of New York as in full force, and entitle the holders to appointment
or promotion to any position to which they were respectively eligible.
*Held*, that holders of certificates of a certain grade, granted by the super-
intendent of instruction of Brooklyn, which entitled the holders to pro-
motion to any grade in the last two years of the elementary school
course without examination, were entitled to have their names placed
on the promotion list, and recognized by the board of examiners of New
York as entitled to promotion, though their percentages had not been
preserved, without submitting themselves to a further examination for
such promotion, required by the by-laws of the board of education of
New York.

2. MANDAMUS—MINISTERIAL DUTY.
Where a city board of school superintendents were required to make
out and file a list of holders of teachers' certificates eligible to promo-
tion, the making of such list was a ministerial duty, enforceable by
mandamus.

Goodrich, P. J., dissenting.

83 N.Y.S.—1

Appeal from Special Term, Kings County.

Application by the Brooklyn Teachers' Association and others for mandamus against the board of education of the city of New York and another. From an order denying the application, petitioners appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Ira Leo Bamberger (Benjamin N. Cardoza, on the brief), for appellants.

James McKeen (Walter S. Brewster, on the brief), for respondents.

WOODWARD, J. It is alleged in the petitioners' affidavit, and admitted by the answering affidavit of the city superintendent, that "all holders of the licenses or certificates known as 'Grade A' were eligible, by the possession thereof, to appointment and promotion to any grammar grade in the schools of the said city of Brooklyn." It is also alleged and admitted that under section 1101 of the charter, as amended (3 Laws 1901, p. 483, c. 466), license Grade A shall be recognized by the superintendent of schools and by the board of examiners of the city of New York as in full force; that, unmindful of the aforesaid charter provision, the board of education of the city of New York has adopted two by-laws, which, to make an applicant "eligible for license for promotion to any grade in the last two years of the elementary school course," require certain examinations and other qualifications in addition to the holding of license Grade A, or No. 2; that, pursuant to these by-laws, the city superintendent of schools has prepared a list known as the "Eligible List of Persons Holding License for Promotion," and placed thereon only the names of those teachers who have complied with the requirements of the said by-laws; and that "the effect of the said by-law, if the same be enforced, is to render your petitioner, Jeannetta Baum, and many hundred other teachers, ineligible for appointment or to promotion to a position to which they were rendered eligible by the possession of licenses and certificates granted to them by the superintendent of public instruction of the city of Brooklyn, and by authority of the board of education of the said city of Brooklyn."

I agree with the Presiding Justice that "the two by-laws are inoperative so far as they forbid promotion of persons holding the Brooklyn license Grade A," but I think the difficulty which he suggests as to section 1090 is more imaginary than real. In this proceeding the petitioners are not seeking promotion. They ask that their names be placed upon the special list for promotion, as otherwise they are rendered ineligible for promotion, and thus the very result is brought about, which we are agreed cannot be—the forbidding of promotion to holders of license Grade A. The fact that no ratings of the standing of the various holders of license Grade A have been preserved cannot be the fault of the teachers, but rather of the school authorities, who should not be permitted to take advantage of their own neglect or omission. Moreover, the return

shows that upon the list of licenses Grade A the names are arranged together in the order in which the said licenses were issued—an order which may well be followed in the absence of percentage ratings that under section 1101 of the charter cannot properly be demanded. of holders of Grade A licenses.

Matter of Stebbins, 41 App. Div. 269, 58 N. Y. Supp. 468, may be easily distinguished from the case at bar, for in that case no eligible list had ever been filed, and the petitioner was seeking to compel the preparation of such a list, though there was no provision for the list, either by statute or by law, while in our present case a list of persons eligible for promotion to the four upper grammar grades has been filed, and the board of superintendents has been directed not to promote any one to such grades whose name is not upon it.   Moreover, in the Stebbins Case the petitioner's certificate made him eligible for appointment as "principal of a school," and he asked to have his name placed on a list to be prepared of the names of those eligible for appointment as principal of a high school.   We said (page 270, 41 App. Div., page 469, 58 N. Y. Supp.):

"It is a complete answer to the application of the relator that there is in fact no eligible list for high school appointments, nor is any required by law; such a list being expressly excepted from the provisions of the statute."

In the case at bar the petitioners are not seeking to control any discretion now vested in the board of education.   The situation here is quite similar to that in the case of People ex rel. Goldy v. Maxwell, 65 App. Div. 265, 73 N. Y. Supp. 527, affirmed in 169 N. Y. 608, 62 N. E. 1099, which seems to me to settle the question now before us.   The court there held that the test of eligibility was the fact that the person named has received a license (the license there was received in 1875) and, the relator's name having been omitted from a special list made up of those who had been recently examined, from which list alone appointments were made, directed the issuance of a writ of mandamus.   As the court say in that case (page 267, 65 App. Div., page 529, 73 N. Y. Supp.):

"To construe the provisions as contended for by the city superintendent would necessarily make various provisions [of the charter] inconsistent with each other, while the view indicated gives effect to all of the provisions. thereof, and is clearly within the intention of the Legislature."

The Presiding Justice says that Miss Baum's name is already on an eligible list for promotion, but the list to which he refers is the general list, and not the list of those eligible to promotion.   The holders of license Grade A are entitled to have their names placed on the special list for promotion, and it is not within the discretion of the board of superintendents or of the city superintendents to invalidate their licenses by refusing to place their names on that list. The duty is neither judicial nor discretionary, but is ministerial in character, and, there being no other remedy, enforcement may be compelled by mandamus.   People v. Commissioners, 149 N. Y. 26, 43 N. E. 418.

For these reasons, I think the writ should issue for the relief sought for in the second paragraph of the petitioners' prayer, and that the order appealed from should therefore be reversed.

Order reversed, without costs, and motion granted to the extent indicated in opinion of WOODWARD, J. All concur, except GOODRICH, P. J., who reads for affirmance.

GOODRICH, P. J. I dissent from the judgment of my associates, as expressed in the opinion of Mr. Justice WOODWARD, written after I had formulated my reasons in the following opinion:

The Special Term has denied this motion for a writ of mandamus, as stated in the order, "not in the exercise of the court's discretion, but upon the ground that, as matter of law, the petitioners are not entitled to any relief."

In 1889 Mr. William H. Maxwell, then superintendent of public instruction in the city of Brooklyn (now city superintendent of schools of the city of New York), by authority of the board of education, granted one of the petitioners, Miss Baum, a certificate of her qualification as a teacher of grammar grades, and a license as a teacher of Grade A, which have never been revoked, and are still in force. She claims that, as holder of that license, she was entitled, under section 1101 of the Revised Greater New York Charter, to appointment or promotion to any grade in the grammar department of the public schools, but that in June, 1902, the board of education adopted two by-laws, by which applicants for promotion to any grade in the last two years (i. e., the four upper grammar grades) of the elementary school course were required to pass certain examinations therein prescribed, and to satisfy other requirements, in addition to holding licenses Grade A, and whereby applicants for appointment to the graduating class during the second semester of the elementary school course were required to have served at least one year in other grades of the last two years of the course. In pursuance of such by-laws, the city superintendent of schools prepared a list of those to whom licenses to teach had been granted, and placed upon it the names of such teachers as had complied with these two by-laws, and also placed thereon the name of Miss Baum as holder of license Grade A. She has been regularly appointed to the fifth grammar grade, and, at the request of the principal of School No. 18, has been teaching for some time in the fourth grammar grade, but it does not appear that the principal had any authority to appoint her to the fourth grade. She was notified that her place in the fourth grade must be filled by some one who has satisfied the requirements of the two by-laws, and who is on the eligible list for promotion. She admits that she has not complied with the requirements of the two by-laws, and her appeal challenges the power of the board to make such by-laws, as far as they declare her ineligible to appointment or promotion to which she was eligible under the certificate heretofore issued to her.

Two of the petitioners, the Brooklyn Teachers' Association and the Class Teachers' Organization of Brooklyn, are corporations comprising teachers in the public schools of the borough of Brooklyn.

I do not consider the right of such corporations to apply for such a writ of mandamus as is sought by this proceeding, because the view which I take of the matter involved will be sufficiently discussed upon the claim of the other petitioner, Miss Baum, and renders it unnecessary.

The appellants' brief contains a statement that the sole question at issue on this appeal is, "Has the superintendent the power to take away a certificate granted by the board of education?" This involves the examination of the powers of the board of education under the amended Greater New York charter (chapter 466, 3 Laws 1901). Section 1068 confers upon the board of education power to make by-laws, rules, and regulations for the proper execution of all duties devolving upon the board, and for all business pertaining thereto, and "for the proper execution of all powers vested in it by law, and for the promotion of the welfare and best interests of the public schools and public school system of the city in matters committed to its care." Section 1089 requires the board of education to—

"Designate, subject to the requirements of the state school laws in force when this act takes effect or that may hereafter be enacted, the kinds or grades of licenses to teach which may or shall be used in the city of New York, together with the academic and professional qualifications required for each kind or grade of license"; and also to "designate, subject to the like limitations, the academical and professional qualifications required for * * * all other members of the teaching staff. * * * The names of those to whom licenses have been granted, including * * * those duly licensed in the several boroughs prior to the date on which this act takes effect, shall be entered by the city superintendent upon lists to be filed in his office, a separate list being made for each grade or kind of license for which the board of education shall by its by-laws make provision; * * * no person shall be appointed to any educational position whose name does not appear upon the proper eligible list. No person shall teach in any public school in the city who has not such license, except as herein otherwise provided."

This section contains no provision as to promotions.

Section 1090, however, provides that all teachers shall be appointed by the board of education on the nomination of the board of superintendents, and shall be promoted or assigned to duty in such schools, and to such positions in such schools, as the board of superintendents shall determine. Such nominations—

"Must be made from the list of properly certificated * * * teachers * * * in the regular order of the standing of the candidates on said lists. * * * Existing eligible lists in the city of New York and the relative standing of persons whose names are on said lists shall not be affected by the passage of this act."

Under these provisions, I should have no doubt that the board of education had power to pass the two by-laws in question, were it not for the fact that section 1101 contains a provision that:

"All licenses to teach or certificates of qualifications for teaching granted by the superintendent of public instruction of the city of Brooklyn, or by authority of the board of education of the said city of Brooklyn, prior to February first, eighteen hundred and ninety-eight, * * * shall * * * be recognized by the city superintendent of schools and the board of examiners of the city of New York, as in full force, and shall entitle the holders

to appointment or promotion to any position to which they were respectively
eligible by the possession of such licenses or certificates."

It is elementary that effect must be given to all the provisions of
a statute, where it is possible to do so. Evidently it was the inten-
tion of the Legislature by section 1101 to continue in force all the
licenses and certificates issued by the city of Brooklyn, such as the
one issued to Miss Baum, and that the holders of such licenses or
certificates should remain entitled to promotion to any position
to which they were rendered eligible by the possession thereof. Up
to the time of the passage of the charter, no other qualification ex-
cept five years' service as a teacher was made a condition precedent
to promotion. Whatever right was created by such certificates is
still preserved and continued to their holders by section 1101, and
the board of education has no power to deprive them of it by any by-
laws or otherwise It follows that the two by-laws are inoperative
so far as they forbid promotion of persons holding the Brooklyn
license Grade A, unless they comply with their new requirements,
and that such holders stand on precisely the same plane as teachers
in the borough of Manhattan who have complied with the two by-
laws.

But the difficulty is that section 1090 provides that nominations
for promotion shall be filled in the regular order of the standing of
the candidates on the eligible lists, provided, however, that the board
of superintendents may consider for each appointment the three per-
sons whose names are highest on the appropriate list. There is
no method of ascertaining who stands highest on the list, so far as
holders of the old Brooklyn certificates are concerned, for at the
time they were issued the ratings or standards of holders were not
preserved.

There was no provision in the charter of the former city of Brook-
lyn for the promotion of any teacher merely because his name ap-
peared on the eligible list. The return alleges that the by-laws of the
board of education in the former city of Brooklyn provided that
possession of an "A" certificate made the holder eligible to appoint-
ment in any grammar grade, but did not entitle him, as of right, to
promotion merely by reason thereof, nor without specified terms of
previous experience as teacher. Promotion to the fourth grammar
grade required five years of previous experience. Promotions were
made on the recommendation of and selection by the local commit-
tees of the schools, without reference to the respective standing of
the candidates; there being no by-law requiring candidates to be
graded according to percentage received on examination. Ap-
parently the only right conferred upon the holder of license "A" was
the right to apply for promotion to the local committee. As the
power of promotion is by the charter taken away from that com-
mittee and devolved upon the board of superintendents, it is diffi-
cult to see any usefulness or value in the holding of the license Grade
A, other than eligibility to promotion in accordance with the provi-
sions of section 1090; and as it is not possible to assign the stand-
ing of Miss Baum, as compared with persons who have been exam-
ined since the charter took effect, there is no provision by which

she can demand promotion merely because her name appears on the list. In other words, the petitioner fails to distinguish between eligibility to promotion and the right to promotion. Eligibility exists, but that does not include the right to promotion; and here the former decision of this court in Matter of Stebbins, 41 App. Div. 269, 58 N. Y. Supp. 468, becomes applicable. We said (pages 270, 271, 41 App. Div., page 469, 58 N. Y. Supp.):

"We are at a loss to conceive of any vested rights in the relator which have been violated by the new qualifications prescribed by the board of education. By the issue of a certificate to him he became eligible to appointment as principal of a school, no distinction being drawn between high schools and other schools. He was appointed principal of a school, and continues in such place. * * * The most the relator obtained under his certificate was eligibility to appointment if the board saw fit to appoint him. He obtained no right to an appointment. He therefore had no vested right under his certificate."

We have before us a legislative casus omissus, but with that fact we are not concerned, for it is not for courts of justice to provide for all the defects or mischiefs of imperfect legislation, even though the statute becomes in whole or in part unenforceable. Endlich, Interpretation of Statutes, §§ 18, 22; Smith v. Rines, 2 Sumn. 354, 355, Fed. Cas. No. 13,100.

This brings us to the question whether any practical relief can be granted on this appeal. The petitioners prayed for a writ of mandamus: First. Directing the city superintendent to prepare a list of persons to whom licenses to teach have been granted, including those licensed to teach in the several boroughs prior to January 1, 1902, and to specify the relative standing of the persons whose names appear thereon. The return alleges that, so far as practicable, such a list has been made up, and that, as no records of any ratings or percentages were required to be or were preserved under the old system, it is an utter impossibility to prepare a list according to percentage, but that the names of all persons licensed prior to January 1, 1902, including Miss Baum's, are included on the list as prepared. Second. Directing the superintendent to place upon the special list for promotion the names of all persons, including Miss Baum, who hold license Grade A. The return alleges that this has already been done, by placing the names on the list already referred to. Third. Directing the board of education to recognize as eligible for promotion to any of the four upper grammar grades holders of license Grade A, and to recognize such holders as eligible for promotion to the same extent as they were when the said licenses were granted. The return alleges that such eligibility for promotion is recognized. Fourth. Directing the superintendent and the board of education to rescind all resolutions and instructions prohibiting the promotion to any of the four upper grades of persons holding license Grade A who have failed to comply with the requirements of the two by-laws so far as they exclude from nomination holders of license Grade A. Fifth. Directing the board of education to make appointments of all teachers in accordance with their relative standing upon the eligible list.

The granting of these last two requests would afford Miss Baum no practical relief. Her name is already on an eligible list for promotion as required by section 1101, but that does not of necessity and per se entitle her to promotion, any more than did her license under the board of education of the city of Brooklyn. No reason is indicated why she should have preference over others whose names appear on the same list whose standing is not inferior to hers. All nominations for promotion are discretionary in the board of superintendents, and mandamus will not issue to control the exercise of such discretion. The rule is well stated by Mr. Spelling in his Treatise on Injunctions & Extraordinary Remedies, § 1433:

"Mandamus will not lie in any matter requiring the exercise of official judgment, or resting in the sound discretion of a person to whom a duty is confided by law either to control the exercise of that discretion or to determine the decision which shall be finally given, but only to set him in motion, and compel him to exercise his function according to some discretion, when he has refused or neglected to act at all."

See, also, Cassidy v. Young, 92 Ky. 227, 17 S. W. 485, where it was held that, if judgment and discretion are to be exercised by a public body as to how a duty shall be performed, then such duty is both judicial and ministerial, and a mandamus lies to compel the officer to act in the premises, but not to control his judgment and discretion.

Under section 1068 of the charter, the board of education has power to make by-laws for the proper execution of all duties and powers vested by law in it or its several boards and officers, and, under section 1089, to designate the qualifications of the teaching staff. The two by-laws under consideration were passed in pursuance of such power.

There is authority for the principle that:

"Mandamus does not lie to compel a party holding an official position to reverse a decision already rendered in the exercise of discretionary powers. In other words, what has been already done, however erroneously, cannot be undone by this remedy." Spelling, supra, § 1436.

The Supreme Court of South Carolina, in the case of State v. Rice, 32 S. C. 97, 10 S. E. 833, said:

"If the superintendent of education had omitted or refused to make the regulations required by the act, he might have been put in motion by mandamus, and required to make the regulations, as he was expressly required to do. But we think the duty imposed upon him required discretion, and a high degree of judgment, and, not being a plain ministerial duty, but judicial or quasi judicial in character, and having already performed the duty assigned to him to the best of his judgment, we think mandamus will not lie against him."

Moreover, if we should command the board of education to rescind the by-laws and resolutions, the petitioner, Miss Baum, would only be able to say that she was entitled to promotion; but there is no provision of the charter by which it can be said that she is to be preferred for promotion over hundreds of teachers who hold license Grade A under the old system, or under No. 2, its equivalent in the new system. The board has made the two by-laws to assist in the selection of persons from the eligible list for promotion, and I am not prepared to say that they are unreasonable.

For these reasons, I think that the order should be affirmed.